1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7               FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                             SAN JOSE DIVISION

9   Franklin Neal Brady,                    NO. C 06-05354 JW

10              Petitioner,        **ORDER DENYING PETITION FOR WRIT
                                   OF HABEAS CORPUS**
       v.

11
    Thomas L. Carey,
12
                Respondent.
13   _____/

14                          **I.  INTRODUCTION**

15        This matter is now before the Court for consideration of Franklin Brady's ("Petitioner")

16   Petition for Writ of Habeas Corpus pursuant 28 U.S.C. § 2254 concerning his 2003 conviction in the

17   Mendocino County Superior Court.  For the reasons set forth below, the Petition is DENIED as to all

18   claims.

19                          **II.  BACKGROUND**

20   **A.     Facts**[1]

21        Joe Edelman owns property in a wooded area of Mendocino County.  There was a trailer

22   located on the property.  During the summer of 2001, Petitioner went to the trailer approximately six

23   times to help Edelman clean the area and prepare it for sale.  Sometime in August 2001, Richard

24   Mortensen went to the trailer with Petitioner, and Petitioner suggested that Mortensen store his lab

25   equipment there.  Petitioner knew that the equipment was used for making methamphetamine.

26   _____

27        [1]  The fact summary is adopted from the California Court of Appeal Decision.  (See
     Response to Order to Show Cause, Ex. 3 at 3-7, hereafter, "Appeal," Docket Item No. 59; People v.
28   Brady, 129 Cal. App. 4th 1314, 1319-23 (Cal. Ct. App. 2005).)

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

Mortensen had been storing his equipment in Lodi but needed to move it.  Mortensen made two trips to the trailer to store the equipment.

On August 26, 2001, Petitioner and Mortensen went to several stores, where Mortensen bought duct tape, a hose, denatured alcohol, and acetone.  Petitioner assumed Mortensen was buying the materials to manufacture methamphetamine.  Petitioner and Mortensen drove to the Edelman property that evening and spent the night.

The following morning, on August 27, 2001, Mortensen put his glassware and recent purchases in the trailer and then fell asleep on the couch.  Petitioner started a fire in the fire ring next to the trailer to boil water for a sitz bath because his hemorrhoids were bleeding.  After unsuccessful attempts to build the fire, Petitioner threw a piece of wood on some burning paper.  Sparks flew from the fire ring and nearby dry grass caught fire.  Petitioner tried, unsuccessfully to stomp out the grass fire.  Mortensen woke up to see smoke near the trailer.  Petitioner and Mortensen tried to extinguish the fire with the water for his bath, a shovel and cans of soda.  Neighbor Jennifer Provost stopped at the scene because she saw the grass fire.  Petitioner asked her for help, so Provost went home to get water.  By the time Provost returned, Petitioner and Mortensen had left the scene.

California Department of Forestry and Fire Protection ("CDF") Officer Jim Robertson was the first firefighter to reach the site.  Provost was there when he arrived.  Provost told Robertson that she had seen a black jeep leaving the scene of the fire.  Robertson put out a radio bulletin for officers to be on the lookout for a possible arson suspect driving a black jeep.

CDF Officer Larry Grafft heard the radio bulletin and responded to a location on Highway 101 where the black jeep had been pulled over.  Petitioner was in the jeep with Mortensen. Petitioner told Grafft that he had started the fire in the fire ring outside the trailer to boil water for a sitz bath for his hemorrhoids, but that burning paper blew out of the fire ring and the fire "took off." He tried to fight the fire with a shovel and water but left when the water ran out.  Petitioner was arrested on suspicion of arson, but Mortensen was released.

2

1    After Petitioner's arrest, Grafft responded to the fire scene where he found the camping ring,

2    a washtub, and a shovel without a handle.  The Officers noticed multiple colors of flames and smoke

3    coming out of the trailer.  Chris Fisher, another neighbor, told the Officers that the trailer had not

4    been on fire when he arrived, but burst into flames a few minutes later.  Fisher told Robertson that

5    he thought people had been cooking methamphetamines in the trailer.  The Officers determined that

6    Petitioner and Mortensen were likely manufacturing methamphetamine at the trailer, and Mortensen

7    was arrested later that night at Petitioner's house.

8    The forest fire was reported at approximately 3:00 p.m.  Because of the remote location, air

9    support was required to control the fire.  CDF officer James Davis supervised nine air tankers and

10   three helicopters fighting the fire.  Pursuant to CDF protocol, the air tankers carrying fire retardant

11   flew counterclockwise at an altitude of 1,000 to 1,500 feet until they reached the fire, and then

12   descended to approximately 200 feet as they approached the drop site.  Pilot Lawrence Groff

13   completed six successful drops and pilot Lars Stratte completed five successful drops.

14   At about 6:40 p.m., Stratte was flying in pattern and descended for his drop.  Groff, flying

15   very low, below the tree line, approached from the wrong direction and collided with Stratte's plane.

16   Neither pilot survived the collision.

17   **B.**   **Case History**

18   On April 24, 2002, Petitioner and Mortensen were charged in Mendocino County with the

19   following:

20   1)    Felony murder of Lawrence Groff, in violation of California Penal Code § 187;

21   2)    Felony murder of Lars Stratte, in violation of California Penal Code § 187;

22   3)    Manufacturing methamphetamine, with special allegations that Groff and Stratte
23         suffered great bodily injury as a result, in violation of California Health and Safety
            Code § 11379.6;

24   4)    Unlawfully setting fire to a structure or forest land, in violation of California Penal
25         Code §§ 452 and 452.1(c);[2]

26   _____

27   [2] Count 4 was added over defense objection at the close of evidence on March 13, 2003.

28                                             3

5)   Recklessly setting fire to a structure on forest land that did cause death to Groff and Stratte, with special allegations that Groff and Stratte were killed while employed to suppress that fire, in violation of California Penal Code §§ 452 and 452.1(a); and

6)   Conspiracy to manufacture methamphetamine, in violation of California Health and Safety Code § 11379.6(a).

Jury trial commenced on February 10, 2003, and all evidence was presented as of March 13, 2003. The jury returned a verdict finding Petitioner:

1)   not guilty of felony murder of Lawrence Groff;

2)   not guilty of felony murder of Lars Stratte;

3)   guilty of manufacturing methamphetamine, but the special allegations that such act caused the great bodily injury to Groff and Stratte were found not to be true;

4)   guilty of unlawfully setting fire to a structure;

5)   guilty of recklessly causing a fire which caused great bodily injury, and the special allegations that such act caused great bodily injury to Groff and Stratte were found to be true; and

6)   guilty of conspiracy to manufacture methamphetamines.

On May 2, 2003, the court sentenced Petitioner to thirteen years and eight months in state prison, determined as follows: one year and eight months for Count 3, six years for Count 5, plus three additional years for each special allegations attached to Count 5. The court dismissed Count 4 as a lesser included offense and stayed a sentence of one year and eight months for Count 6 pursuant to California Penal Code § 654. The court granted Petitioner 923 days of presentence credit.

On May 5, 2003, Petitioner timely appealed the judgment to the California Court of Appeal, First Appellate District, Division Three. On June 2, 2005, the Court of Appeal affirmed the judgment in all respects. On June 14, 2005, Petitioner filed a petition for rehearing before the Court of Appeal. The petition was denied on July 5, 2005.

On July 8, 2005, Petitioner timely filed a petition for review and a petition for writ of habeas corpus with the California Supreme Court. On September 7, 2005, both petitions were denied.

On August 30, 2006, Petitioner filed the present Petition for a Writ of Habeas Corpus in the Northern District of California. (See Docket Item No. 1.) On October 16, 2006, United States

4

District Judge Susan Illston issued an order to show cause to respondents as to why the Petition should not be granted.  (See Docket Item No. 3.)  On April 16, 2007, Respondents filed an Answer. (See Docket Item No. 14.)  On May 5, 2007, the Court related Petitioner's action to Mortensen's first filed Petition for Writ of Habeas Corpus, Case No. C 06-02968 JW.[3]  (See Docket Item No. 17.) On June 15, Petitioner filed a traverse to Respondents' Answer.  (See Docket Item No. 65.)

On July 2, 2007, Petitioner filed a motion for oral argument, which the Court granted on July 6, 2007.  (See Docket Item Nos. 66 and 67.)  The Court conducted a hearing on January 24, 2008.

## III.  STANDARDS

Petitioner filed his Petition for Writ of Habeas Corpus on August 30, 2006.  Accordingly, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus."  Williams v. Taylor, 529 U.S. 362, 412 (2000).

Under the AEDPA, a district court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision."  Williams, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. 63, 71

---

[3]  On July 2, 2008, Mortensen's Petition was dismissed for failure to exhaust state remedies. (C 06-02968, Docket Item Nos. 26, 27.)

(2003); see Alvarado v. Hill, 252 F.3d 1066, 1068-69 (9th Cir. 2001).  Section 2254(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  Williams, 529 U.S. at 412.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams, at 412-13.  "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, at 411.  The objectively unreasonable standard is not a clear error standard.  See Andrade, 538 U.S. at 75 (rejecting the Ninth Circuit's use of clear error standard in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)).  Conflating the "objectively unreasonable" standard with the "clear error" standard "fails to give proper deference to state courts."  Id.  After Andrade, "[t]he writ may not issue simply because, in [the federal habeas court's] determination, a [s]tate court's application of federal law was erroneous, clearly or otherwise."  Id. at 75-76.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state-court record.  See Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless

the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court.  See Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001), amended by 253 F.3d 1150 (9th Cir. 2001).

Finally, habeas relief is warranted only if the constitutional error at issue is a structural error or had a "substantial and injurious effect or influence in determining the jury's verdict."  Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).  Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual" prejudice.  Brecht, 507 U.S. at 637.

Where, as in this writ, the California Supreme Court denies review of Petitioner's claim without explanation, the Court looks to the last reasoned state court decision in conducting habeas review.  See Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citation omitted) (the district court "looks through" the unexplained California Supreme Court decision to the last reasoned state court decision), cert. denied, 534 U.S. 944 (2001).  The California Court of Appeal rendered the last reasoned state court decision in Petitioner's case.

## IV.  DISCUSSION

Petitioner seeks review of the Court of Appeal's decision[4] on seven grounds.  These grounds were all raised before the Court of Appeal.[5]  Specifically, Petitioner contends the following acts violated his rights under the Fifth, Sixth, and Fourteenth Amendments:

---

[4]  Under section 2254(d), a district court reviews the "last reasoned decision" of the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). Although Ylst was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default.  Id. at 1092 n.3 (citing Lambert v. Blodgett, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003)).  In this case, the Court "looks through" the California Supreme Court's denial of review to the reasoned decision of the California Court of Appeal.

[5]  Petitioner joined in Moretensen's appeal with regard to the errors concerning the methamphetamine charges.

7

1.   Exclusion of evidence that Petitioner is not liable for the deaths of the pilots due to unforeseeable supervening and/or concurrent causes.
2.   Incorrect jury instructions on the law regarding intervening and supervening cause.
3.   Failure to consider new evidence uncovered after the trial that shows Petitioner is not liable for the deaths of the pilots.
4.   Failure to give a *sua sponte* unanimity instruction on the charge of manufacturing methamphetamine.
5.   Failure to consider the cumulative effect of the foregoing errors.
6.   Conviction of manufacturing methamphetamine based on insufficient evidence.
7.   Improper discharge of jurors for cause.

The Court considers each ground in turn.

A.   **Exclusion of Evidence**

Petitioner contends that the trial court's exclusion of certain evidence deprived him of his right to due process, jury trial, confrontation, cross-examination, the assistance of counsel, and the present evidence in his defense.

The Supreme Court has stated that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (*per curiam*).

Exclusion of defense evidence implicates the confrontation and compulsory process clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment.  Crane v. Kentucky, 476 U.S. 683 (1986).  However, neither clause absolutely bars the exclusion of evidence. Taylor v. Illinois, 484 U.S. 400, 410 (1988).  The accused does not have "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Id.  Even relevant evidence may be excluded "by the State for a 'valid' reason." Montana v. Egelhoff, 518 U.S. 37, 53 (1996).

Habeas relief may only be granted when a trial error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  The harmless error standard applies even if the state appellate court did not make a finding regarding the effects of the error on the jury.  Fry v. Pliler, 551 U.S. 112, 121-22 (2007).

8

In this case, Petitioner proffered evidence that he alleged would show the existence of unforeseeable intervening causes that absolve him of responsibility for the deaths. The Court of Appeal explained that under California law, a criminal defendant is responsible for the foreseeable consequences of his acts. An independent intervening cause may absolve a defendant of liability only if 1) the intervening cause was an extraordinary and abnormal occurrence, and 2) the harm caused by the intervening cause was not foreseeable. If the intervening cause was foreseeable or the ultimate injury was foreseeable, the defendant is responsible for the injury. After considering each category of evidence excluded by the trial court, the Court of Appeal affirmed the exclusion. The court determined that the evidence proffered was irrelevant because "so long as the midair collision of aircraft engaged in fighting the fire was among the risks foreseeably created by recklessly starting the fire, Petitioner is responsible for the collision and its consequences."

The categories of evidence excluded were as follows:  1) evidence that Groff's blood alcohol content was .044 percent, slightly more than the .040 percent permitted by the Federal Aviation Administration, and related expert testimony speculating on what effect the alcohol might have had on Groff's judgment; 2) reports that Groff failed to make radio contact during his final drop and expert testimony that Groff violated other CDF protocols or was otherwise negligent; 3) expert opinion that Groff might have become physically and mentally incapacitated due to a combination of heat, dehydration, and loss of orientation; 4) testimony of Groff's widow that the engine on Groff's plane had failed one week prior to the accident and testimony of another pilot that the cockpit of a similar plane had been leaking carbon monoxide. The Court of Appeal explained why each of these categories of evidence was not relevant.

First, the court held that evidence that Groff's alcohol consumption was a substantial factor in causing the midair collision would not absolve Petitioner of liability for the deaths because it would not have affected the collision's foreseeability with respect to Petitioner. The issue was not whether Petitioner could have foreseen Groff's alcohol consumption, but whether Groff could foresee a midair collision of firefighting aircraft. The jury answered the latter question in the

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

affirmative.  Moreover, the court found that there was no evidence the alcohol had an appreciable effect on Groff's flying abilities.  To the contrary, the court found that the evidence showed Groff had been in the air for several hours and successfully completed six prior drops without any signs of aberrant behavior.

Second, the court held that in criminal prosecutions, contributory negligence of the victim is not a defense.  The court explained that under California law, a victim's actions constitute an unforeseeable intervening cause only if they are extraordinary and abnormal.  The court found that Petitioner had not offered proof that failure to make radio contact during one of seven drops was extraordinary or abnormal.

Third, the court held that the "natural cause" of a collision is not a superseding cause.  The court held that a reasonable jury could not have concluded that it was extraordinary and abnormal that a pilot repeatedly flying over a forest fire and dropping fire retardant from 200 feet above the fire might become overheated and disoriented.  The court found that evidence that Groff had become dehydrated and disoriented could not have affected the finding that the deaths of the two pilots were foreseeable consequences of starting the fire.

Finally, the court held that speculative inferences from evidence are not relevant to establish speculative inferred facts under California's evidence code.  The court found that there was no evidence that engine failure or carbon monoxide inhalation caused the fire.

Petitioner does not challenge the constitutionality of the Court of Appeal's interpretation of California law regarding foreseeability.  Nor does Petitioner contend that the evidence proffered would alter Petitioner's ability to foresee a midair collision.  Rather, Petitioner contends it was not foreseeable that Groff would fly in the wrong direction, consume alcohol, fail to radio, or fly in an improperly maintained airplane.  However, Petitioner has not shown how, if all of the foregoing was true, a midair collisions of firefighting planes would be any less foreseeable to a person recklessly starting a forest fire.  Nor has Petitioner shown that the exclusion of the evidence had a substantial and injurious effect on the jury's verdict.  The jury was told that Groff was flying in the wrong

10

direction and below the treeline when the accident occurred.  Thus the jury was aware of Groff's

mistakes, but nonetheless concluded that the collision was foreseeable.  Thus, Petitioner has not

shown that evidence was improperly excluded under standard rules of relevance or that the

exclusion resulted in prejudice.

Accordingly, the Court denies the Petition on this ground.

**B.**     **Incorrect Jury Instructions**

Petitioner contends that the instructions given to the jury regarding causation deprived him

of due process, as well as his right to jury trial, confrontation, cross-examination, the assistance of

counsel and to present evidence in his defense.

A challenge to a jury instruction solely as an error under state law does not state a claim

cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72

(1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that

the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

process.  See Estelle v. McGuire, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see

also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that

the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some

[constitutional right].'").  The instruction may not be judged in artificial isolation, but must be

considered in the context of the instructions as a whole and the trial record.  See Estelle, 502 U.S. at

72.  In other words, the court must evaluate jury instructions in the context of the overall charge to

the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982)

(citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will

support a collateral attack on the constitutional validity of a state court's judgment is even greater

than the showing required to establish plain error on direct appeal."  Henderson v. Kibbe, 431 U.S.

145, 154 (1977).  The question in such a collateral proceeding is whether the ailing instruction by

itself so infected the entire trial that the resulting conviction violates due process, not merely

1 whether "the instruction is undesirable, erroneous, or even universally condemned." Cupp v.

2 Naughten, 414 U.S. 141, 146 (1973).

3    A jury instruction that omits an element of an offense is constitutional error subject to

4 "harmless error" analysis. See Neder v. United States, 527 U.S. 1, 8-11 (1999). The omission will

5 be found harmless unless it "'had substantial and injurious effect or influence in determining the

6 jury's verdict.'" California v. Roy, 519 U.S. 2, 5 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637

7 (1993)). Where the trial court simply fails to alert the jurors that they must consider an element of

8 the crime, the omission is harmless if review of the facts found by the jury establishes beyond a

9 reasonable doubt that the jury necessarily found the omitted element. See, e.g., Neder, 527 U.S. at

10 15-20 (error harmless because "the omitted element was uncontested and supported by

11 overwhelming evidence"). But if the reviewing federal habeas court is in grave doubt as to whether

12 the error had substantial and injurious effect or influence in determining the jury's verdict, the

13 petitioner is entitled to the writ. See Evanchyk v. Stewart, 340 F.3d 933, 940-42 (9th Cir. 2003).

14    The proper question in assessing harm in a habeas case is, "'Do I, the judge, think that the

15 error substantially influenced the jury's decision?'" O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

16 If the court is convinced that the error did not influence the jury, or had but very slight effect, the

17 verdict and the judgment should stand. Id. at 437. If, on the other hand, the court is not fairly

18 assured that there was no effect on the verdict, it must reverse. Id. In the "narrow circumstance" in

19 which the court is in "grave doubt" about whether the error had substantial and injurious effect or

20 influence in determining the jury's verdict, it must assume that the error is not harmless and the

21 petitioner must win. Id. at 436, 438.

22    The trial court gave the following instructions regarding causation:

23 CALJIC No. 3.40:

24       The criminal law has its own particular way of defining cause. A cause of death or
         great bodily injury is an act or acts that sets in motion a chain of events that produces as a
25       direct, natural and probable consequence of the act or acts the death or great bodily injury
         and without which the death or great bodily injury would not occur.

26

27

28                                                12

United States District Court

For the Northern District of California

Court's Instruction Number 2:

A direct, natural and probable consequence is a consequence which is normal and is a reasonably foreseeable result of the original act. The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. The precise consequence need not have been foreseen. It is enough if the possibility of some harm of the kind which resulted from the act was foreseeable.

CALJIC No. 3.41:

There may be more than one cause of the deaths of Lawrence Groff and Lars Stratte. When the conduct of two or more persons contributes concurrently as a cause of the deaths, the conduct of each is a cause of the deaths if that conduct is also a substantial factor contributing to the result. A cause is concurrent if it is operative at the moment of the death and acted with another cause to produce the death. If you find that a defendant's conduct was a cause of the death to another person, then it is no defense that the conduct of some other person , even the deceased person, contributed to the death.

Court's Instruction Number 5:

An intervening act may be so disconnected and unforeseeable as to be a superseding cause that, in such a case, the defendant's act will be regarded at law as not being a cause of the injuries sustained.

CALJIC No. 8.56:

It is not a defense to a criminal charge that the deceased or some other person was guilty of negligence, which was a contributory cause of the death involved in the case.

Petitioner contends that court instructions number 2 and 5 erroneously characterized California's law of causation. Petitioner contends that the correct law on intervening and supervening cause is that stated in Judicial Council of Cal. Civ. Jury Instrs., CACI 430, 431, 432, and 433. The Court of Appeal considered Petitioner's argument and concluded that while the CACI instructions would have provided greater clarity, they "confirm the substantive accuracy of the rules of law contained instructions the court gave." The Court of Appeal also found that counsel's closing arguments provided further clarity, such that "both attorneys focused the jury's attention on the critical question of whether the deaths of the two firefighters responding to the fire that [Petitioner] started were reasonably foreseeable consequences of setting the fire."

In a habeas proceeding, the Court is not entitled to question the state court's determination that the jury instructions correctly represented California law with regard to causation. Since

Petitioner does not challenge the constitutionality of the law itself, the Court has no basis to find that the jury instructions violated a constitutionally-protected right.

Accordingly, the Court denies the Petition on this ground.

**C.   New Evidence**

Petitioner contends that newly discovered evidence shows he is "actually innocent" of the crimes for which he was convicted.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact." Id.

The new evidence offered by Petitioner is a preliminary report issued by the National Transportation and Safety Board in July 2005 regarding its investigation into the accident. [6] In addition to confirming several of the facts already known, the report suggested a "heavy volume of radio traffic" among the pilots. Petitioner contends that this "heavy volume of radio traffic" constitutes a supervening cause because it shows that the negligent operation and negligent maintenance of the radio system was an unforeseeable supervening cause.

Petitioner does not address the basic holding of the Court of Appeal that the only relevant consideration is whether the midair collision was foreseeable. The jury answered this question in the affirmative when it convicted Petitioner on Count 5. The court clearly instructed the jury that the contributory negligence of another is not a defense to a criminal charge. Thus, Petitioner's new evidence does not suggest that the jury would have found differently on the issue of foreseeability. Absent such a showing, there is no basis for the court to conclude that Petitioner suffered any prejudice from the unavailability of the evidence.

---

[6] Petitioner claims the report became available while his appeal was pending.

14

United States District Court

For the Northern District of California

Moreover, Petitioner has not shown how failure to consider this information violates any of his constitutional rights. Petitioner's sole contention is that the new evidence would have added to the factual record that the jury would have considered in determining guilt. However, unless the failure to consider the evidence is a constitutional violation, the Court cannot grant habeas relief based on a claim that the factual record was less than complete.

Accordingly, the Court denies the Petition on this ground.

**D.**     **Unanimity Instruction on the Charge of Manufacturing Methamphetamine**

Petitioner claims that he was denied due process because the trial court failed to give unanimity instructions to the jury regarding the methamphetamine charge.

Due process does not require that an instruction be given unless the evidence supports it. See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case. See Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000). Failure to instruct on the theory of defense violates due process if "'the theory is legally sound and evidence in the case makes it applicable.'" Clark v. Brown, 450 F.3d 898, 904-05 (9th Cir. 2006) (quoting Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004)). The same standard applies when the trial court fails to issue the instruction *sua sponte*. Byrd v. Lewis, 510 F.3d 1045, 1049 (9th Cir. 2007). However, "[i]t is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory." United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996) (internal quotation omitted); United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979), cert. denied, 445 U.S. 966 (1980). Nor is the defendant entitled to an instruction embodying the defense theory if the evidence does not support it. Menendez, 422 F.3d at 1029.

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbe, 431 U.S. 145, 155 (1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "especially heavy burden." Id. The significance of

the omission of such an instruction may be evaluated by comparison with the instructions that were

given. Id. at 156.

A jury instruction that omits an element of an offense is constitutional error subject to

"harmless error" analysis. See Neder v. United States, 527 U.S. 1, 8-11 (1999). The omission will

be found harmless unless it "'had substantial and injurious effect or influence in determining the

jury's verdict.'" California v. Roy, 519 U.S. at 2, 5 (quoting Brecht v. Abrahamson, 507 U.S. 619,

637 (1993)); see also Roy v. Gomez, 108 F.3d 242, 242 (9th Cir. 1997) (on remand after California

v. Roy).

Petitioner contends the trial court erred by failing, *sua sponte*, to instruct the jury that they

were required to find that all of the elements of the offense occurred either a) at the trailer or b) at

Petitioner's home. The instructions given to the jury were as follows:

> Each Defendant is accused in Count 3 of having violated section 11379.6, subdivision (a) of the Health and Safety Code, a crime.
> Every person who Manufactures Methamphetamine, a controlled substance, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, is guilty of a violation of Health and Safety Code section 11379.6, subdivision (a), a crime.
> The crime of manufacturing a controlled substance, and the term "manufacture" as used in this instruction, does not require proof nor mean that the process of manufacturing be completed. Rather, the crime is committed when a person knowingly participates in the initial or intermediate steps carried out to process a controlled substance. Thus, it is unlawful for a person to engage in the synthesis, processing, or preparation of a chemical used in the manufacture of a controlled substance, even if the chemical is not itself a controlled substance, provided the person knows that the chemical is to be used in the manufacturing of a controlled substance.
> In order to prove this crime, each of the following elements must be proved:
> 1.  A Defendant manufactured, either directly or indirectly, by means of chemical extraction, or independently by means of chemical synthesis, a controlled substance, namely Methamphetamine;
> 2.  That Defendant knew that the substance to be manufactured had the character of a controlled substance; and
> 3.  That Defendant had the specific intent to manufacture a controlled substance, namely Methamphetamine.

The Court of Appeal considered Petitioner's claim and held that under California law, a

unanimity instruction is not required where the criminal acts are so closely connected as to form a

single transaction or where the offense itself consists of a continuous course of conduct. The court

further held that the crime of manufacturing methamphetamine is an ongoing offense which remains

in progress once the initial steps have been set in motion, even when no active manipulation of the manufacturing apparatus is taking place.  Since Petitioner was charged with manufacturing methamphetamines on or about August 27, 2001, the court found that the crime was prosecuted as a single ongoing offense.

The evidence to support Petitioner's conviction included the following: 1) Petitioner's testimony that he suggested Mortensen store methamphetamine manufacturing equipment at the trailer; 2) Petitioner's accompaniment of Mortensen the day before the fire to purchase ingredients and supplies for manufacturing methamphetamines; 3) expert testimony that the arrangement of the equipment in the trailer demonstrated the trailer was an active laboratory and not just a storage area; 4) acetone, methamphetamine, and pipes with methamphetamine residue lawfully seized from Petitioner's home, which experts testified were used to "clean" methamphetamine.  Petitioner presented evidence that 1) the trailer did not have electricity and thus could not have been an active laboratory and 2) Mortensen's testimony that he had placed the methamphetamine in Petitioner's house and intended to clean it using acetone.

Petitioner does not challenge the instruction given or question the Court of Appeal finding that the crime charged was a single ongoing offense.  Thus, Petitioner has not shown that the jury was required to find that all of the required elements occurred at one of the two locations.  Absent such a showing, the Court has no basis to conclude that the failure to give such an instruction was erroneous.  Even if the Court assumes unanimity was an element of the crime, Petitioner has not shown how the omission had a substantial and injurious effect on the jury's determination. Petitioner's claim of prejudice is simply a conclusion that prejudice occurred without any explanation of how.  Thus, Petitioner has not provided the Court with grounds to grant a writ based on omission of jury instructions.

Accordingly, the Court denies the Petition on this ground.

**E.**     **Cumulative Error**

Petitioner contends that the cumulative effect of the errors alleged above constitutes reversible prejudice.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant to such a degree that his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003). Cumulative error is more likely to be found prejudicial when the government's case is weak.  See, e.g., Thomas v. Hubbard, 273 F.3d 1164, 1179-81 (9th Cir. 2002).  However, where there is no single constitutional error existing, trial errors cannot accumulate to the level of a constitutional violation.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002); Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).

Since the Court has not found any of Petitioner's claims to constitute constitutional error, no cumulative error is possible.  Accordingly, the Court denies the Petition on this ground.

**F.       Conviction of Manufacturing Methamphetamine Based on Insufficient Evidence**

Petitioner claims that his conviction for manufacturing methamphetamines was based on insufficient evidence.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt thus states a constitutional claim.  See Jackson v. Virginia, 443 U.S. 307, 321 (1979).  If such a claim is ultimately proven, the prisoner is entitled to federal habeas relief. See id. at 324; see also, e.g., Wigglesworth v. Oregon, 49 F.3d 578, 582 (9th Cir. 1995).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  See id. (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt

18

1   beyond a reasonable doubt, may the writ be granted.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d

2   at 338.

3        On habeas review, a federal court evaluating the evidence under In re Winship and Jackson

4   v. Virginia should take into consideration all of the evidence presented at trial.  LaMere v. Slaughter,

5   458 F.3d 878, 882 (9th Cir. 2006).  If confronted by a record that supports conflicting inferences, a

6   federal habeas court "must presume – even if it does not affirmatively appear on the record – that the

7   trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

8   resolution."  Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to

9   near-total deference.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most

10  exceptional of circumstances, Jackson does not permit a federal habeas court to revisit credibility

11  determinations.  See id.

12       Here, with respect to the methamphetamines charge, the Court of Appeal determined that the

13  manufacturing count was prosecuted as a single ongoing offense that occurred on or about August

14  27, 2001.  Petitioner has not challenged the validity of this finding.  Thus, the Court concludes that

15  the jury was not required to find that all of the steps of manufacturing took place in any particular

16  location.

17       Further, the jury instructions for manufacturing methamphetamines (see § IV(D)) make it

18  clear that "the crime is committed when a person knowingly participates in the initial or intermediate

19  steps carried out to process a controlled substance."  Thus evidence that Petitioner undertook

20  preparatory steps in the manufacturing process would be sufficient to support conviction under the

21  statute.

22       The evidence offered in support of the charge consisted of expert testimony and Petitioner's

23  own admissions.  Task Force Officer Robert Nishiyama investigated the fire scene and identified

24  wires that may have been connected to heating mantles and a power strip next to the mantles with

25  what appeared to be remnants of plugs and wires leading into it.  Nishiyama also found a Coleman

26  camp stove and Coleman fuel in and around the trailer.  Matthew Kirsten, a California Department

27  of Justice criminalist, also investigated the fire.  Kirsten testified that in his expert opinion, based on

28

United States District Court
For the Northern District of California

19

1   Mortensen's recent purchases, the large quantity of glassware, and the fact that a glass was sitting on

2   a heating mantle, the trailer housed an operational lab, not merely a storage facility.  The state also

3   offered evidence that the methamphetamine and acetone found in Petitioner's home was evidence of

4   finished "cook" because the dirty methamphetamine is washed in acetone at the end of the ephedrine

5   reduction manufacturing process.

6          Petitioner admitted that he had suggested Mortensen store his lab equipment at the trailer

7   and that he knew the equipment was used to manufacture methamphetamines.  Petitioner also

8   admitted that he accompanied Mortensen to several stores on August 26, 2001, to purchase materials

9   which Petitioner assumed would be used to manufacture methamphetamines.

10         Petitioner's claim of error is 1) that the lack of electricity at the trailer precludes any finding

11  that manufacturing activity took place at the trailer and 2) that no evidence was offered proving that

12  he knew of the methamphetamines seized from his home.  Weighing the evidence that the trailer

13  lacked electricity against the officers' expert testimony regarding the type and arrangement of

14  equipment at the trailer and Petitioner's own testimony regarding his activities at the trailer, the

15  Court finds that a reasonable jury could conclude that Petitioner had take preparatory steps toward

16  the manufacturing of methamphetamines.  Thus, as with the Court of Appeal, the Court does not find

17  that the evidence supporting the manufacturing methamphetamine conviction was insufficient.

18         Accordingly, the Court denies the Petition on this ground.

19  **G.    Improper Discharge of Jurors for Cause**

20         Petitioner contends that the trial court improperly discharged jurors.

21         A trial court may exclude for cause any prospective juror who will be unable to render an

22  impartial verdict based on the evidence.  See Irvin v. Dowd, 366 U.S. 717, 723-24 (1961).  A

23  prospective juror must be removed for cause if his views or beliefs would prevent or substantially

24  impair the performance of his duties as a juror in accordance with his instructions and his oath.  See

25  Wainwright v. Witt, 469 U.S. 412, 424 (1985).  To disqualify a juror for cause requires a showing of

26  either actual or implied bias, "'that is . . . bias in fact or bias conclusively presumed as a matter of

27  law.'"  United States v. Gonzalez, 214 F.3d 1109, 1111-12 (9th Cir. 2000) (quoting 47 Am. Jur. 2d

28

*United States District Court*
*For the Northern District of California*

Jury § 266 (1995)).  Actual bias is bias in fact–the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.  See Gonzalez, 214 F.3d at 1112.  Courts have found actual bias where, based upon personal experience, a potential juror stated he could not be impartial when evaluating a drug dealer's testimony; where a juror in a case involving embezzlement from a labor union emphasized his negative experiences with unions and responded equivocally when asked if he could render a fair and impartial verdict despite those views; and where a juror in a drug distribution case admitted to a conviction for marijuana possession, but stated that he believed it to be the product of entrapment.  See id. (citing cases).

The dismissal of a juror for cause based on his acknowledgment that he disagrees with the law governing the case does not result in a presumptively biased jury.  A petitioner still must show that the jurors who found him guilty were unable or unwilling to perform their duties as jurors.  See United States v. Padilla-Mendoza, 157 F.3d 730, 733-34 (9th Cir. 1998).

Petitioner claims that the trial court improperly discharged six jurors who indicated they would have difficulty applying either the felony murder rule or finding that the airplane crash was a foreseeable result of manufacturing methamphetamines.  Petitioner contends that discharging these jurors resulted in a jury inclined to convict.  However, Petitioner does not contend or present evidence that the selected jurors were unwilling or unable to apply the law as required.  Thus, assuming *arguendo* that the trial court improperly discharged the jurors in question, the Court does not find that Petitioner's constitutional rights were violated because there is no evidence that he was tried by a biased jury.

Accordingly, the Court denies the Petition on this ground.

## V.  CONCLUSION

The Court DENIES the Petition for a Writ of Habeas Corpus as to all grounds.  Judgment shall be entered accordingly.

Dated: December 18, 2009

_James Ware_

JAMES WARE
United States District Judge

21

1   **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2   Michele Joette Swanson michele.swanson@doj.ca.gov
    Patricia Rosemary Littlefield p.littlefield@earthlink.net
3   William Michael Kuimelis William.kuimelis@doj.ca.gov

4

5
    **Dated: December 18, 2009**                    **Richard W. Wieking, Clerk**
6

7                                                   **By:   /s/ JW Chambers**
                                                         **Elizabeth Garcia**
8                                                        **Courtroom Deputy**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California